UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VERTEX PHARMACEUTICALS INCORPORATED,

Plaintiff,

v.

FRANK GARY RENSHAW,

Defendant.

C.A. NO. 16-11912-FDS

---

FRANK GARY RENSHAW,

Plaintiff-in-Counterclaim,

v.

VERTEX PHARMACEUTICALS INCORPORATED,
SCOTT FIELDS, AND MARINA PENNEY,

Defendants-in-Counterclaim.

**AMENDED COUNTERCLAIM OF DR. FRANK GARY RENSHAW**

Pursuant to Fed.R.Civ.P. 13 and 15(a)(1)(B), Defendant, Dr. Frank Gary Renshaw ("Dr. Renshaw") hereby amends his Counterclaim against Counterdefendant Vertex Pharmaceuticals Incorporated ("Vertex") and Counterdefendants Dr. Scott Fields ("Dr. Fields") and Dr. Marina Penney ("Dr. Penney") as follows:

**INTRODUCTION AND NATURE OF THE COUNTERCLAIM**

1. This is an action for bad faith termination of employment and tortious interference with contractual relations arising out of Counterdefendant Vertex's wrongful constructive discharge of Dr. Renshaw and the conduct of Counterdefendants Dr. Fields and Dr. Penney.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction of this Counterclaim pursuant to 28 U.S.C. § 1367 because this Counterclaim is so related to Vertex's claim that it forms part of the same case or controversy.

3. The Court has personal jurisdiction over each Counterdefendant because the causes of action asserted herein arise from Counterdefendants' transaction of business in the Commonwealth.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Counterclaim occurred in this jurisdiction.

## PARTIES

5. Dr. Renshaw is a former Senior Medical Director of Vertex.

6. According to Vertex's website, Vertex is a "global biotechnology company."

7. Dr. Fields is Vertex's Vice President and Head of Clinical Oncology.

8. Dr. Penney is Vertex's Director, Translational Oncology.

## FACTS

9. Dr. Renshaw is a highly skilled physician who performs a critical role in seeking effective treatments for cancer and other deadly diseases.

10. On or about September 15, 2015, the parties entered into an employment agreement, attached hereto as Counterclaim Exhibit A, under which Vertex agreed to provide Dr. Renshaw with a hiring bonus and other compensation, including without limitation, eligibility to participate in Vertex's annual performance incentive program.

11. Vertex offered Dr. Renshaw such compensation as an inducement for him to leave his prior employer prior to receiving compensation that he would have otherwise earned.

12. It was Dr. Renshaw's understanding that he would receive an equity award, or the opportunity to acquire Vertex equity, prior to the end of 2015.

13. Vertex hired Dr. Renshaw to lead a team of professionals in efforts to obtain regulatory approval of Vertex products designed to treat cancer patients.

14. A key aspect of Dr. Renshaw's role was to oversee patient studies that would provide data necessary to measure the effectiveness of Vertex products.

15. While employed at Vertex, Dr. Renshaw used his best efforts to perform his duties in a satisfactory manner.

16. Because of the critical job he performs. Dr. Renshaw approaches his work with a very high expectation of excellence in his work environment.

17. Dr. Renshaw's chosen field is a profession that demands an environment that will encourage the effectiveness of the professional and meet their needs so as to facilitate effective results.

18. By constructively terminating Dr. Renshaw, Vertex stood to gain economically by attempting to claw back Dr. Renshaw's sign-on bonus and relocation benefits and withholding the equity compensation it had promised him.

19. Vertex upper management failed to provide resources and personnel needed for Dr. Renshaw to enroll a sufficient number of patients in the program Vertex hired him to lead.

20. Vertex, Dr. Fields and Dr. Penney failed to provide an environment where Dr. Renshaw could obtain the data needed to accomplish what Vertex hired him to do.

21. Vertex, through Dr. Fields, informed Dr. Renshaw that it was replacing him with two consultants.

22. Vertex and Dr. Fields removed Dr. Renshaw from a key project.

23. Vertex and Dr. Fields refused to accommodate Dr. Renshaw's request for a revised schedule necessary for him to meet his family demands, despite there being no legitimate employment reason for them to do so.

24. In fact, Vertex and Dr. Fields never even responded to Dr. Renshaw's reasonable request for an accommodation.

25. Vertex, Dr. Fields and Dr. Penney systematically removed Dr. Renshaw from involvement with important meetings, including, without limitation, meetings regarding molecular science and biology and program strategy and denied him the opportunity to participate in important phone calls.

26. Vertex and Dr. Penney included study design comments without Dr. Renshaw's consent that made it difficult to enroll patients in the program that Dr. Renshaw was hired to lead.

27. Vertex required Dr. Renshaw to meet a certain result before the end of December, 2016, but removed his ability to have input in how to obtain that result.

28. As a result of this continuous pattern of misconduct, the work environment had deteriorated to such a degree that it became clear to Dr. Renshaw that it would be impossible for him to obtain his end of year objective, and Vertex would terminate him in December.

29. Vertex effectively gave Dr. Renshaw's job to someone else, transferred his responsibilities, left him without authority, and ultimately relegated him to a nonexistent job.

30. It is much more difficult for a person in Dr. Renshaw's line of work to find a job at the end of the year.

31. Because of his family commitments, Dr. Renshaw could not afford to be unemployed for a significant period of time.

32. Had Dr. Renshaw permitted Vertex to terminate him, his future career prospects may have been harmed.

33. Dr. Renshaw did as any reasonable person in his position would have done. He felt compelled to resign and ultimately did so.

**COUNTERCLAIM COUNT I—BAD FAITH TERMINATION OF EMPLOYMENT**

**(Against Counterdefendant Vertex)**

34. Dr. Renshaw incorporates by reference the allegations contained in paragraphs 1-33 of this Counterclaim as if fully set forth herein.

35. The employment contract between Dr. Renshaw and Vertex contained an implied covenant of good faith and fair dealing, even if it was an at-will arrangement.

36. An employer-initiated termination not made in good faith constitutes a breach of an employment contract.

37. The working conditions at Vertex had become so difficult or unpleasant that a reasonable person in Dr. Renshaw's shoes would have felt compelled to resign.

38. Based on an objective assessment of the conditions that Dr. Renshaw has asserted he was expected to work, they were so difficult as to be intolerable.

39. Vertex created adverse working conditions that were unusually aggravated or amounted to a continuous pattern that existed almost upon inception of Dr. Renshaw's employment.

40. Vertex reduced Dr. Renshaw's duties and rank.

41. Vertex's improper conduct resulted in a constructive termination of Dr. Renshaw.

42. As a result of Vertex's misconduct, Dr. Renshaw suffered economic loss as a result of Vertex's wrongful attempt to claw back Dr. Renshaw's sign-on and relocation bonus,

the failure to provide him with promised equity compensation and a denial of the opportunity to receive future compensation and benefits.

**COUNTERCLAIM COUNT II—INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

**(Against Counterdefendants Dr. Fields and Dr. Penney)**

43. Dr. Renshaw incorporates by reference the allegations contained in paragraphs 1-42 of this Counterclaim as if fully set forth herein.

44. Dr. Renshaw had an employment contract with Vertex.

45. By their conduct, Counterdefendants Dr. Fields and Dr. Penney knowingly interfered with that contract.

46. Dr. Field's and Dr. Penney's conduct was improper in motive or means.

47. Dr. Renshaw could suffer harm as a result of Dr. Field's and Dr. Penney's conduct if Vertex is successful in clawing back Dr. Renshaw's sign-on bonus and relocation benefits.

48. Dr. Renshaw has suffered harm as a result of Dr. Field's and Dr. Penney's conduct because such conduct contributed to Vertex's constructive termination of him with the resulting loss of compensation and benefits.

WHEREFORE, based on the foregoing, Dr. Renshaw respectfully requests that this Court award the following relief:

A. Enter judgment in favor of Dr. Renshaw on all Counts in the present Counterclaim;

B. Award damages to Dr. Renshaw in an amount to be determined at trial;

C. Award Dr. Renshaw his costs, interest, and reasonable attorneys' fees; and

D. Award Dr. Renshaw such other relief as this Court deems just and proper.

**JURY DEMAND**

Dr. Renshaw requests a trial by jury on his Counterclaim.

Dated this 5th day of January 2017.

Respectfully Submitted,

DR. FRANK GARY RENSHAW

By His Attorneys,

/s/ James F. Radke
James F. Radke BBO#667299
jradke@murthalaw.com
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110
Telephone: 617-457-4000
Facsimile: 617-482-3868

Michael F. Tomasek (admitted *pro hac vice*)
mtomasek@tomaseklaw.com
Tomasek Law Office, LLC
195 N. Front Stret, Suite A
Braidwood, IL 60408
Telephone: 815-390-5141

**CERTIFICATE OF SERVICE**

I, James F. Radke, certify that on January 5, 2017, I filed this document through the ECF system which will send the document electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ James F. Radke
James F. Radke