# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| VERTEX PHRMACEUTICALS, INC., )   | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.** |
| v. ) | **16-11912-FDS** |
| ) | |
| FRANK GARY RENSHAW, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| ) | |
| FRANK GARY RENSHAW, ) | |
| ) | |
| Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VERTEX PHRMACEUTICALS, INC., ) | |
| MARINA PENNEY, and SCOTT ) | |
| FIELDS, ) | |
| ) | |
| Counterclaim Defendants. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER ON
## MOTION TO DISMISS COUNTERCLAIMS

SAYLOR, J.

This is a dispute arising out of an employment agreement.  Vertex Pharmaceuticals, Inc.,

is a biotechnology company that develops treatments for cancer and other diseases.  Frank Gary

Renshaw was formerly employed at Vertex as a Senior Medical Director.  In that position, he

was responsible for overseeing the regulatory approval process for certain cancer treatments.  He

resigned after less than a year.  Vertex has filed a lawsuit against Renshaw seeking recovery of

the signing bonus and relocation expenses they paid him.  Renshaw has filed a counterclaim

alleging breach of the implied covenant of good faith and fair dealing against Vertex, and intentional interference with contractual relations against two of his former supervisors.

The counterclaim defendants have moved to dismiss the counterclaim for failure to state a claim upon which relief can be granted.  For the following reasons, the motion to dismiss will be denied.

## I.      Background

The facts are set forth as alleged in the amended counterclaim.

Frank Renshaw is a physician and former employee of Vertex Pharmaceuticals, Inc. Vertex is a biotechnology company that researches and develops treatments for cancer and other diseases.  Scott Fields and Marina Penney supervised Renshaw's work at Vertex.

On September 15, 2015, Vertex hired Renshaw to be a Senior Medical Director.  (Am. Countercl. ¶ 5).  The parties signed an employment agreement that provided that Renshaw would receive a hiring bonus of $120,000 and was eligible for "relocation benefits."  (*Id.*, Ex. 1).  The agreement stated that if Renshaw terminated his employment voluntarily within the first twelve months, he would "be required to repay the Hiring Bonus to the Company in full."  (*Id.*).  It further stated that Renshaw had a "target cash bonus for a full calendar year [of] 25% of [his] annual base" which would be awarded based upon his performance and the company's performance, and was contingent on his continued employment on the date the award was paid at the end of the calendar year.  (*Id.*).  It further provided that he was eligible to receive an equity grant based upon his and the company's performance.  (*Id.*).  The employment agreement explicitly provided that Renshaw was joining Vertex as an at-will employee.  (*Id.*).

In his capacity as Senior Medical Director, Renshaw led a team in the effort to obtain regulatory approval of cancer treatments, including overseeing patient studies.  (¶¶ 13–14).  The

counterclaim alleges that upper management at Vertex failed to provide him with the necessary resources to enroll a sufficient number of patients in those studies.  (*Id.* ¶ 19).  It further alleges that Fields removed Renshaw from a key project, refused to accommodate a revised schedule necessary for him to meet his family demands, prevented him from attending important meetings and telephone calls, and eventually informed him that Vertex was replacing him with two consultants.  (*Id.* ¶¶ 21-23).  It alleges that Penney also prevented him from attending important meetings and included study design comments without his approval that made it difficult to enroll patients in studies.  (*Id.* ¶ 26).  The counterclaim alleges that those actions left Renshaw without authority in a non-existent job, effectively transferring his position to someone else.  (*Id.* ¶ 29).  He resigned before the end of his first year with the company.  (*Id.* ¶ 33).

On September 21, 2016, Vertex brought this action to recover the signing bonus and relocation expenses paid to Renshaw.  Renshaw filed an answer and counterclaim on October 26, 2016.  He amended the counterclaim on January 5, 2017.

The counterclaim defendants have moved to dismiss the counterclaim.[1]

## II.     Analysis

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the counterclaim must state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the [counterclaim] are true (even if doubtful in fact)."  *Id.* at 555 (citations

---

[1] The amended counterclaim differed from the original counterclaim only with respect to the change of a date in paragraph 27.  Accordingly, the Court treats the motion to dismiss filed on December 15, 2016, as applicable to the amended counterclaim.

omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the

counterclaim fails to set forth "factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v.*

*Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano*

*de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### A.   <u>Violation of the Implied Covenant of Good Faith and Fair Dealing</u>

Count One of the amended counterclaim alleges that Vertex violated the implied

covenant of good faith and fair dealing by constructively terminating Renshaw.  Where, as here,

the relationship at issue was one of at-will employment, the claimant must show that the

employer terminated him "in order to deprive him of compensation fairly earned and legitimately

expected for services already rendered."  *Barthelmes v. Kimberly-Clark Corp.*, 2015 WL

1431156, at *13 (D. Mass. Mar. 27, 2015) (quoting *Cochran v. Quest Software, Inc.,* 328 F.3d 1,

8 (1st Cir. 2003)).  *See also Fortune v. Nat'l Cash Register Co.,* 373 Mass. 96, 104–105 (1977).

That rule is "designed to preclude an employer from taking an unfair financial advantage."

*Cochran*, 328 F.3d at 8.

In order to be terminated in violation of the implied covenant of good faith and fair

dealing, an employee must be actively or constructively discharged.  In this case, Renshaw

resigned; however, the counterclaim alleges that Vertex constructively discharged him from his

employment.

There are two ways to establish a constructive discharge.  An employee may prove that

an express employment contract was so materially breached by the employer as to make the

employee's "continued performance virtually pointless." *Rubin v. Household Commer. Fin. Servs.*, 51 Mass. App. Ct. 432, 446 (2001) (quotations omitted). Alternatively, the employee could prove that the working conditions at the employer were "so difficult as to be intolerable." *GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 34 (1995). A plaintiff claiming constructive discharge based on intolerable working conditions must show that the adverse working conditions were "unusually aggravated or amount[ed] to a continuous pattern before the situation will be deemed intolerable." *GTE Prod. Corp. v. Stewart*, 421 Mass. 22, 35 (1995) (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1247 (1994)). The test is an objective one, requiring a claimant to show that the conditions of his employment were so intolerable that "a reasonable person in [his] shoes would have felt compelled to resign." *Feliciano-Hill v. Principi*, 439 F.3d 18, 27 (1st Cir. 2006) (quoting *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 26 (1st Cir. 2002)). "[M]ere dissatisfaction with the nature of assignments, criticism of an employee's performance, and dissatisfaction with compensation" are insufficient to prove a claim of constructive discharge. *GTE Prod. Corp.*, 421 Mass. at 35.

The counterclaim here alleges that Renshaw was constructively discharged because his working conditions had become intolerable. In substance, it alleges that he was removed from key projects, was not permitted to be involved in critical telephone calls, was denied necessary resources and personnel to perform his duties, had responsibilities taken from him, had his rank reduced, and was replaced by two consultants. Although it is certainly a close question, drawing all inferences against the counterclaim defendant, the allegations in the counterclaim are sufficient to allege a continuous pattern of adverse working conditions that amount to a plausible claim for constructive discharge. Furthermore, the counterclaim states a plausible claim that Vertex took those actions in order to avoid paying Renshaw compensation that he fairly earned

Case 1:16-cv-11912-FDS   Document 38   Filed 03/15/17   Page 6 of 7

and legitimately expected.  Therefore, the motion to dismiss will be denied with respect to Count

One.  The Court expresses no view as to whether the evidence ultimately developed will be

sufficient for the claim to survive summary judgment.

### B.    Intentional Interference with Contractual Relations

 Count Two of the counterclaim alleges a claim for intentional interference with

contractual relations against counterclaim defendants Fields and Penney.  To prove a claim of

intentional interference with contractual relations, the claimant must show that "(1) he had a

contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the

defendant's interference, in addition to being intentional, was improper in motive or means; and

(4) the plaintiff was harmed by the defendant's actions." *Harrison v. NetCentric Corp.*, 433

Mass. 465, 476 (2001).  The "improper motive" required to prove an intentional interference

claim against an individual official of an employer is "actual malice," defined as a "'spiteful,

malignant purpose, unrelated to the legitimate corporate interest' of the employer." *Weber v.*

*Cmty. Teamwork, Inc.*, 434 Mass. 761, 781–782 (2001) (quoting *Boothby v. Texon, Inc.,* 414

Mass. 468, 487 (1993)).

Fields and Penney contend that the amended counterclaim does not plead sufficient facts

to state a claim that their actions were improper in motives or means.  However, a claimant may

prove "improper motive" by showing facts from which a reasonable inference of malice may be

drawn.  *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 664 (1981).  "The line between a proper

inference and unwarranted conjecture is not easily drawn" and depends on the facts of each case.

*Id.*

Here, the counterclaim, in substance, alleges that Fields and Penney, without reason or

justification, continually took away responsibilities and withheld privileges and resources from

Renshaw.  According to the counterclaim, that pattern of behavior undermined Renshaw's ability to perform his duties.  Taken in the light most favorable to Renshaw, those facts could give rise to a reasonable inference of malice.  Accordingly, the motion to dismiss will be denied with respect to Count Two.  Again, the Court expresses no view as to the sufficiency of the evidence.

III.    **Conclusion**

For the foregoing reasons, counterclaim defendants' motion to dismiss is DENIED.

**So Ordered.**


/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated: March 15, 2017                    United States District Judge